IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

MILES IRVINE                                    Civ. No. 6:10-cv-6300-TC

                        Plaintiff,              OPINION AND ORDER

        v.

JOHN E. POTTER, POSTMASTER GENERAL,

                        Defendant.

COFFIN, Magistrate Judge:

        Remaining in this action are plaintiff Miles A. Irvine's claims against defendant John E.

Potter, former Postmaster General of the United States.  Plaintiff suffers from a number of

serious physical ailments and alleges that he was subjected to severe and pervasive harassment in

the course of his duties as a mail carrier in Corvallis, Oregon.  Plaintiff claims this harassment

and abuse was directed at him based on his disability and physical limitations.  Accordingly,

plaintiff alleges that defendant violated 29 U.S.C. § 701, commonly known as the Rehabilitation

Act of 1973 ("Rehabilitation Act"), claiming four separate causes of action under the statute:

1 - OPINION AND ORDER

failure to accommodate, retaliation, being subjected to a hostile work environment, and disparate treatment. Defendant moves to dismiss plaintiff's claims under the Rehabilitation Act, and seeks summary judgment as an alternative. Plaintiff opposes defendant's motion and demands a jury trial. The parties have consented to magistrate judge jurisdiction, and, for the reasons set forth below, I grant defendant's motion in part and deny it in part.

BACKGROUND

Plaintiff works as a C-32 mail-carrier for the United States Postal Service ("USPS") in Corvallis, Oregon. Defendant served as Postmaster General at all times when the facts in question occurred and held the same job title when Plaintiff initiated this action.

Plaintiff suffers from a number of health-related issues, including carpal tunnel syndrome, wrist tendonitis, and a herniated disk in his back. Combined, these ailments cause extremity pain and sensitivity. All are permanent conditions affecting plaintiff's ability to fully perform the physical demands of his job without exacerbating his disabilities. Plaintiff has suffered from all three conditions since at least 2008. Defendant concedes that plaintiff is disabled.

Until January 2009, plaintiff worked the C-2 carrier route, requiring use of a particular type of mail case. Using this case exacerbated many of plaintiff's ailments, prompting him to request accommodating modifications in hopes of alleviating some of his symptoms. Plaintiff eventually received his requested modifications, though he alleges that it took longer than a year to do so.

In January 2009, plaintiff was reassigned to the C-32 mail route. This route utilizes a different mail case than C-2 and as constituted, does not contain sufficient equipment to

2 - OPINION AND ORDER

accommodate plaintiff's disabilities. The C-32 route also required plaintiff to deliver more mail than his C-2 route. Plaintiff claims this switch exacerbated his physical ailments. Plaintiff has made repeated requests for accommodation, and insists that he has either been denied or ignored at every juncture. Plaintiff claims that he received partial C-32 accommodations on December 18, 2009, nearly a full year after making his initial request and has not received any further accommodations.

Plaintiff additionally claims that his superiors and other employees began harassing, isolating, and ridiculing him, due to both his disabilities and his repeated requests for accommodation. As evidence, plaintiff claims his supervisors retaliated against him by suspending him from work, purposely destroying his medical documentation, failing to submit worker's compensation claims, making hostile comments, assigning him heavier workloads, and forcing him to comply with heightened appearance standards while not imposing the same restrictions on other employees. Plaintiff also claims that another disabled employee was subjected to the same treatment as plaintiff based on that employee's disability and accommodation requests.

Plaintiff lodged an administrative complaint with USPS on May 7, 2011, claiming to have been subjected to unlawful discrimination premised on his sex/gender and disability and that he was retaliated against for filing complaints. On June 2, 2011, USPS denied plaintiff's claims. On September 21, 2010, plaintiff initiated this lawsuit, naming then-Postmaster General John E. Potter as defendant. Plaintiff sued under the Rehabilitation Act, Title VII of the 1964 Civil Rights Act, and the Family Medical Leave Act ("FMLA").

3 - OPINION AND ORDER

Defendant moved to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and in the alternative for summary judgment on January 28, 2013. Plaintiff opposes this motion; however, in plaintiff's response, he agrees to dismiss his Title VII and FMLA claims, leaving only his claims under the Rehabilitation Act as the continuing basis for this lawsuit. Here, the relevant facts are dispositive of both the Rule 12(b)(1) motion and portions of the merits of this case. Accordingly, this court will apply the standards applicable to a motion for summary judgment made under Federal Rule of Civil Procedure 56(a) in deciding the defendant's motion to dismiss. See Autery v. U.S., 424 F.3d 944, 956 (9th Cir. 2005). Accordingly, the defendant's motion to dismiss for lack of subject matter jurisdiction will only be granted if it can be demonstrated that he is entitled to summary judgment as well.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant's assertion that there is no genuine issue of material fact must be supported by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations...admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

The materiality of a fact is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. V. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

DISCUSSION

Plaintiff has alleged four separate violations of the Rehabilitation Act: failure to accommodate, unlawful retaliation, a hostile work environment, and disparate treatment.

To determine if a federal agency has violated the Rehabilitation Act, a reviewing court must apply the same analytical framework required by Title I of the Americans with Disabilities Act ("ADA"). See 29 U.S.C. § § 791(g), 794(d); McLean, 222 F.3d at 1153. Establishing a prima facie case of unlawful employment discrimination under the Rehabilitation Act requires plaintiff to demonstrate three things: that he is a person with a disability, is otherwise qualified for employment, and has suffered discrimination because of his disability.

For the following reasons, I decline to consider plaintiff's disparate treatment claim and dismiss this argument from this case. Plaintiff's First Amended Complaint alleged three causes of action evidencing discrimination under the Rehabilitation Act: failure to accommodate, unlawful retaliation, and a hostile work environment. Plaintiff first claimed disparate treatment in his response to defendant's motion for summary judgment.

To proceed with his disparate treatment theory, plaintiff must have put defendant on notice of this claim before the summary judgment stage. See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000). Here, plaintiff did not plead the disparate treatment theory in the First Amended Complaint and did not make known during discovery his intention to pursue a disparate treatment claim. Accordingly, defendant was not notified of the disparate treatment

5 - OPINION AND ORDER

theory in a timely manner. See Hernandez v. Hughes Missile Systems Co., 298 F.3d 1030, n.20 (9th Cir. 2002) (overruled on separate grounds by Raytheon Co. v. Hernandez, 540 U.S. 44 (2003)); See also Coleman, 232 F.3d at 1294.

This deficiency would not be remediable even were plaintiff to file a motion for leave to amend the First Amended Complaint to include the Disparate Treatment claim. "[L]ate amendments to assert new theories are not reviewed favorably when the facts and theory have been known to the party seeking amendment since the inception of the cause of action." Acri v. International Ass'n of Machinists and Aerospace Workers, 781 F.2d 1393, 1398 (9th Cir. 1986) (declining to extend even the liberal Rule 15(a) amended pleading standard to a deficient complaint in such circumstances). Further, under Rule 16(b), "the diligence of the party seeking the amendment" is the controlling factor in determining whether to allow leave to amend a complaint. Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992).

The material facts giving rise to plaintiff's disparate treatment claim have been known to plaintiff since this lawsuit was initiated. Plaintiff initially failed to plead this as a cause of action, further failing to do so upon amending the initial complaint. Only upon contesting the defendant's motion for summary judgment did plaintiff allege disparate treatment as a cause of action. For these reasons, I find that plaintiff has not been diligent in pursuing a disparate treatment claim and declines to consider it at this late stage of the litigation.

With respect to the remaining claims, I analyze plaintiff's retaliation and hostile work environment claims to the "burden shifting analysis" articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). This is a three-step process which first requires a plaintiff to establish a prima facie case of employment discrimination under a particular cause of action. Id. at 802. If a plaintiff achieves this, the burden shifts to the employer to establish a legitimate and nondiscriminatory reason for taking an adverse employment action against the plaintiff. Id. If

successful, the burden shifts back to the plaintiff to demonstrate there is a genuine issue of material fact regarding the employer's proffered reason. Id. at 803. The burden shifting analysis does not control the analysis of plaintiff's failure to accommodate claim. See Hoffman v. Caterpillar, Inc., 256 F.3d 568, 572 (7th Cir. 2001).

1. Reasonable Accommodation

Plaintiff asserts that defendant violated the Rehabilitation Act by failing to reasonably accommodate his disabilities.    According to plaintiff, defendant never engaged in an administrative analysis to determine the reasonableness of plaintiff's accommodation requests before either rejecting or ignoring them, resulting in a per se violation of the Rehabilitation Act. Plaintiff also alleges that defendant failed to timely provide accommodations. Defendant responds that plaintiff is unable to establish a prima facie case of failure to accommodate. Accordingly, defendant moves for summary judgment on this claim.

The Rehabilitation Act requires government agencies to provide disabled employees with reasonable accommodations for their injuries and ailments. McClean v. Runyon, 222 F.3d 1150, 1153 (9th Cir. 2000); See also 29 U.S.C. § 794. Federal regulations implemented pursuant to the Rehabilitation Act provide that unless an employer can demonstrate that making such accommodations would present an undue hardship, the employer has discriminated against the employee in violation of the Rehabilitation Act. Fuller v. Frank, 916 F.2d 558, 561 (9th Cir. 1985) (citing 29 C.F.R. § 1613.704(a)).

This regulation contains three requirements: (1) that the employee qualify as "handicapped;" (2) that the agency make reasonable accommodations to the handicap; and (3) that an accommodation need not be made if it would impose an "undue hardship." Fuller, 916

7 - OPINION AND ORDER

F.2d at 561. What constitutes "reasonable accommodation" is a contextual question dependent on the circumstances of each case. This is generally a question of fact, albeit one that can be resolved through a motion for summary judgment if the relevant factual dispute is not genuine. Id. at 536, n.6 (referencing Reynolds v. Brock, 815 F.2d 1416, 1423 (9th Cir. 1985)).

Defendant concedes that plaintiff qualifies as handicapped and does not allege that accommodating plaintiff's injuries would have presented an undue hardship, thus this dispute hinges on whether defendant made reasonable accommodations. Defendant denies failing to provide plaintiff with reasonable accommodations and claims to have provided any accommodation defendant knew plaintiff needed. (#36 at 14). According to defendant, all accommodations that USPS and plaintiff's supervisors knew or had reason to know of were accommodated via the proper administrative channels or procedures. (Id. at 14-16).

I find that plaintiff has presented sufficient evidence to avoid having his failure to accommodate claim dismissed on summary judgment. Ransom v. State of Arizona Bd. Of Regents, 983 F. Supp. 895, 899 (D. Arizona 1997) (citing Anderson, 477 U.S. at 250)). Plaintiff points to his physician's status report dated June 20, 2007 laying out his physical restrictions requiring accommodation which was submitted to plaintiff's supervisors. (#43, Ex. 9). It took plaintiff over a year and a half to receive these accommodations. Plaintiff also sent the Corvallis postmaster numerous accommodation requests with medical documentation via certified mail after having his initial requests go without accommodation for months on end. (Id., Ex. 10). Plaintiff has also submitted evidence that he attempted to make changes to his "edit book" which would allow him to rearrange his case labels to avoid aggravating his injuries, but that a supervisor, Roger House, took the edit book from him and kept it for five months, thus

8 - OPINION AND ORDER

preventing his route from being updated to accommodate his pain and symptoms. (Id., Ex. 1 at 26-27).    Additionally, plaintiff points to evidence that his supervisors failed to work with plaintiff through USPS' District Reasonable Accommodation Committee ("DRAC"), the required avenue for resolving postal worker's accommodation requests. (#44 at ¶ 18).

Plaintiff has gone beyond the pleadings and highlighted evidence from the record to support his claim that defendant failed to accommodate his disability. Accordingly, there is a dispute over material facts relevant to the question of whether defendant failed to provide reasonable accommodations for plaintiff's disabilities which is best left to a jury.

2. Retaliation

The ADA and Rehabilitation Act prohibit retaliation by barring employers from punishing employees for engaging in legally protected activity. Pardi v. Kaiser Foundation Hospitals, 389 F.3d 840, 850 (9th Cir. 2004). To succeed on a retaliation claim, a plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, "which means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington Northern, 548 U.S. at 68 (2006) (quoting Rochon v. Gonzalez, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). Plaintiff claims defendant retaliated by harassing him, bullying him, and causing him physical pain because he pursued his rights under the Rehabilitation Act, namely seeking reasonable accommodations for physical disabilities.

Plaintiff further alleges that defendant failed to provide him with necessary equipment for two separate one-year periods, that his supervisors made frequent, malicious, and derogatory remarks about him in front of other employees, increased his workload in response to his accommodation requests, ignored his submission of proper medical documentation evidencing

his physical limitations, and failed to process his worker's compensation requests.  According to plaintiff, these were adverse actions were undertaken with a retaliatory intent to punish plaintiff for making reasonable accommodation requests.

A prima facie case of retaliation requires a plaintiff to show (1) engagement in a protected activity; (2) an adverse employment action; and (3) a causal link between the first two elements. Coons v. Sec'y of U.S. Dept. Of Treasury, 383 F.3d 879, 887 (9th Cir. 2004); Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1065-66 (9th Cir. 2003).  Taken together, these elements require the plaintiff to put forth "evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion."  O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996)).

Here, plaintiff has successfully established a prima facie case.  The parties do not dispute that plaintiff engaged in protected activity by pursuing his accommodation requests; additionally, such requests are protected activity as a matter of law. See Coons, 383 F.3d at 887.  The parties disagree over whether plaintiff was subjected to adverse employment actions. To be adverse, actions must "reasonably likely to deter employees from engaging in protected activity." Pardi, 389 F.3d at 850 (citing Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000)); See also Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1065-66 (9th Cir. 2003).  Annoyances and petty slights, however, are not sufficiently severe to constitute adverse actions; an employee must be retaliated against in a way that produces injury or harm. Burlington North. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67-68.  Thus, any action taken by defendant that did not produce materially adverse harm or injury to plaintiff does not constitute adverse action, because a reasonable employee would not be deterred from engaging in protected activity as a result.

I find that, under the 'injury or harm' requirement in <u>Burlington</u>, some of plaintiff's allegations constitute adverse action. Plaintiff claims the increased workload from reassignment to the C-32 route made his disability-related symptoms worse. Pl's. Dec. at ¶ 13. The same is true of the nearly two years he was required to use mail cases without proper accommodations to his physical disabilities. <u>Id.</u> at ¶¶ 10-13. These actions produced injury or harm, which could deter a reasonable, similarly situated employee from engaging in protected activity. However, plaintiff's other complaints do not evidence adverse action because he fails to demonstrate that they produced a level of harm or injury sufficient to deter a reasonable person from engaging in protected activity. The level of egregiousness does not rise beyond the point of being classified as petty slights or minor annoyances.

Plaintiff has also demonstrated a causal link between these adverse actions and his pursuit of protected activity. Proximity in time between accommodation requests and adverse action can give rise to a presumptive retaliatory intent on the part of an employer. <u>Pardi</u>, 389 F.3d at 850 (9th Cir. 2004); <u>Ray</u>, 217 F.3d at 1244. An adverse action closely following complaints of discrimination gives rise to a presumption of retaliatory intent. <u>See</u> <u>Bell v. Clackamas County</u>, 341 F.3d 858, 865-66 (9th Cir. 2003).

Here, based on the nature of plaintiff's accommodation requests and the length of time before they were resolved, it is reasonable to affix a retaliatory intent to the delays in accommodating plaintiff's work stations. Plaintiff's formal and informal requests for accommodations were outstanding for nearly a year on two separate occasions; the second request has not as of this date been fully accommodated. Additionally, the second of these one year delays involved the exact same physical accommodations simply being moved to plaintiff's

new work station, making this second delay far less reasonable than the first. Thus, plaintiff has demonstrated that a causal link exists between some of his engagement in protected activity (requesting mail case accommodations) and the adverse action taken by defendants.

Defendant has not offered legitimate reasons for taking adverse action; rather, defendant categorically denies that any adverse action was ever taken. This may be true, but is insufficient as a matter of law to shift the burden back to the plaintiff under the required McDonnell Douglas framework. The existence of adverse action is a material fact and there is a genuine dispute between the parties here. Thus, defendant is not entitled to judgment as a matter of law on this claim.

C. Hostile Work Environment

Amongst the actions giving rise to plaintiff's hostile work environment claim are plaintiff's allegations of verbal abuse, being required to perform job duties adversely affecting his pre-existing medical conditions, defendant repeatedly and intentionally failing to submit worker's compensation claims in a timely manner, and intentionally holding up the administrative grievance process plaintiff attempted to use to obtain disability accommodations.

A hostile work environment claim must show that a plaintiff's workplace was "permeated with 'discriminatory intimidation, ridicule, and insult' that [was] 'sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment,'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65, 67 (1986). A prima facie showing requires plaintiff to demonstrate that: (1) he was subjected to verbal or physical conduct of a discriminatory nature; (2) the conduct was based on his disability; and (3) it was sufficiently severe or pervasive to alter the conditions of plaintiff's employment. See Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995). A prima facie

showing also requires a plaintiff to be a qualifying individual with a disability, which defendant concedes plaintiff is.

Plaintiff has failed to make a prima facie showing. He satisfies the first two elements, but fails to demonstrate the harassment was so severe and pervasive as to materially affect the conditions of his employment. This prong of the prima facie showing of a hostile work environment claim requires plaintiff to show not only that he actually believed the conditions of his employment were materially and adversely affected by defendant's actions, but also that a reasonable, similarly situated person would have felt the same. Ellison v. Brady, 924 F.2d 872, 879 (9th Cir. 1991). Plaintiff has repeatedly demonstrated his subjective belief that the conditions of his employment were adversely affected, but fails to demonstrate that a reasonable, similarly situated employee would feel the same.

Appropriate factors for a court to consider on this element are: (1) the frequency of the conduct; (2) the conduct's severity; (3) if the conduct is threatening or intimidating, as opposed to a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance. Harris, 510 U.S. at 23. Considering these factors, an objectively reasonable person in plaintiff's position would not have considered their ability to perform job-related duties compromised in a materially adverse way. Plaintiff's complaints of verbal abuse were infrequent occurrences and do not constitute threats or intimidation. Supervisors referring to his workstation as his "kingdom," questioning the severity of his injuries and the competence of his doctor, and telling him to get back to work might be rude, unnecessary, and insensitive, but I cannot find such comments severe, threatening, or intimidating.

Nor do plaintiff's other allegations constitute severe, pervasive action giving rise to an inference of hostility or threatening disposition on the part of defendant. Plaintiff claims he was assigned new mail routes and heavier workloads as a result of lodging accommodation requests.

13 - OPINION AND ORDER

The fact that he was reassigned to a new route with more work, however, does not carry with it an inference of hostility or threat; surely such action is not so severely threatening or intimidating as a matter of fact to prevent a reasonable person, even one with plaintiff's handicaps, from performing their work-related duties satisfactorily. Different mail routes necessarily contain heavier workloads, a reality that an objectively reasonable postal service worker should understand as a matter of course. Without more, plaintiff's claims that he was assigned this work because he requested accommodations is unfounded and insufficient to demonstrate that an objectively reasonable person in the plaintiff's shoes would feel that this extra work unreasonably interfered with their work performance.

Nor is plaintiff's claim that being required to work in plain view of accommodating equipment without being granted access to it sufficient to satisfy the reasonable person standard. Plaintiff might have felt threatened or intimidated by this, but he provides no evidence that the equipment remained there based on any nefarious motive on the part of defendant. Additionally, this conduct is at worst insensitive, but it is certainly not severe enough to breed an environment riddled with hostility that would interfere with an objectively reasonable person's job performance.

Plaintiff's allegations do not establish that an objectively reasonable person would feel threatened, intimidated, or humiliated to the point that they could not satisfactorily perform their job. In fact, plaintiff himself admits that he is able to perform his work, even with the added work and lack of accommodations. (#42 at 4 and #43 at ¶ 9). Accordingly, I find that plaintiff has failed to establish a prima facie case of a hostile work environment and that defendant is entitled to judgment as a matter of law on this issue.

///

///

14 - OPINION AND ORDER

CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for lack of subject matter jurisdiction and in the alternative summary judgment (# 35) is GRANTED IN PART and DENIED IN PART. The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

Dated this day of April, 2013.

 

 

 

 

_____
Thomas M. Coffin
United States Magistrate Judge

15 - OPINION AND ORDER